# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

---

**Dean Norrell**,

        Plaintiff,

    v.

**Jeff Foster Trucking, Inc.**; and
**Jeffry A. Foster**,

        Defendants.

Case No. 3:18-CV-00443-JDP
Case Type: Employment

**PLAINTIFF'S MEMORANDUM IN
OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

---

## INTRODUCTION

In their motion to dismiss, Defendants improperly disregard the allegations inside the Complaint while simultaneously making allegations outside of the Complaint. Further, Defendants misunderstand the applicable claims and caselaw. Plaintiff respectfully requests that the Court deny the motion.

## POSTURE

Norrell need not recount any of the underlying allegations here, as all the facts needed to decide Defendants' motion are contained in the Complaint. Geinosky v. City of Chicago, 675 F.3d 743, 745 n. 1 (7th Cir. 2012) ("A motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice … If a moving party relies on additional materials, the motion must be converted to one for summary judgment under Rule 56.").

Defendants Jeffry[1] A. Foster and Jeff Foster Trucking, Inc. (collectively referred to herein as "JFT"), by and through their attorneys, improperly allege facts in their memorandum in support of Defendants' Motion to Dismiss. Norrell respectfully requests that the Court disregard these alleged facts. See id.  See also Mid-West Mgmt Inc. v. Capstar Radio Op. Co., 2005 WL 503817 at *1 (W.D. Wis. Mar. 1, 2005) (disregarding "facts outside the complaint" when considering a motion to dismiss).

JFT alleges that Norrell was "no longer eligible to perform his previous position" when he returned to work from his first medical leave.[2] Norrell did not allege this in his Complaint. He respectfully requests that the Court disregard this allegation from JFT's memorandum.

JFT alleges that Norrell was "not otherwise available to work on a full-time basis" when he returned to work from his first medical leave.[3] Norrell did not allege this in his Complaint. He respectfully requests that the Court disregard this allegation from JFT's memorandum.

---

[1] This spelling is consistent with the spelling as it appears on the Wisconsin Secretary of State's website. See Ex. A (listing Jeff Foster Trucking, Inc.'s Registered Agent as, "Jeffry Foster"). In any event, Norrell will stipulate to the proper spelling of Mr. Foster's name after he files his Answer.

[2] Defendants' Memorandum of Law in Support of Their Motion to Dismiss Plaintiff's Complaint (hereinafter "Def. Memo.") at 2.

[3] Def. Memo. at 3.

JFT alleges that Norrell "commenced a second FMLA leave on or about August 16, 2016."[4] Norrell's Complaint does not allege that he began his second FMLA leave on August 16, 2016. In its memorandum, JFT *admits* that Norrell does not make this allegation: "Plaintiff omits the specific date of these events [the start of Norrell's second FMLA leave] in his Complaint."[5] Furthermore, Norrell will show that the allegation that he started his second FMLA leave on August 16, 2016 is demonstrably false: text messages between Foster and Norrell establish that Norrell was working for JFT on August 16, 20, and 22.[6] Norrell respectfully requests that the Court disregard the allegation that Norrell started his second FMLA leave on August 16, 2016.

JFT alleges that Norrell "exhausted slightly more than his remaining available four (4) weeks of FMLA leave."[7] Norrell did not allege this in his Complaint. In fact, Norrell alleges the opposite:  In paragraph 1, Norrell alleges that he used 9 weeks of FMLA leave; in paragraph 56, Norrell alleges that he still had approximately 3 weeks of federally protected leave available when JFT terminated his employment; in paragraph 71, Norrell alleges the same; in paragraph 73, Norrell alleges the same. In short, Norrell

---

[4] Def. Memo. at 3.

[5] Def. Memo. at 3.

[6] See Ex. B. See Hang v. Heavner, Beyers & Mihlar, LLC, 849 F.3d 348, 353-54 (7th Cir. 2017) ("nothing prevents a plaintiff opposing dismissal from elaborating on the complaint or even attaching materials to an opposition brief illustrating the facts that the plaintiff expects to be able to prove … so long as those materials or elaborations are consistent with the pleadings" (quotations and citations omitted)).

[7] Def. Memo. at 3.

alleges in his Complaint that he *did not exhaust* the leave afforded to him under the FMLA. Norrell respectfully requests that the Court disregard JFT's contradictory allegations.

JFT alleges that Norrell would have "presumably" needed "weekly aftercare sessions" after Norrell returned to work from his second FMLA leave.[8] Norrell did not allege this in his Complaint. He respectfully asks the Court to disregard this allegation from JFT's memorandum.

In summary, Norrell respectfully requests that the Court use only those facts alleged in the Complaint to decide JFT's motion.[9] Geinosky, 675 F.3d at 745 n. 1 (7th Cir. 2012).

## LEGAL ANALYSIS

### I.      Standard of Review

"[A] complaint must include only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Swierkiewicz v. Sorema N.A., 534 U.S. 506, 513 (2002) (citing Fed. R. Civ. P. 8(a)(2)). When analyzing a motion to dismiss, the Court must "construe the … complaint in the light most favorable [to the plaintiff], accept [the plaintiff's] well-pleaded facts as true, and draw all reasonable inferences in [the plaintiff's] favor." Burke v. 401 N. Wabash Venture, LLC, 714 F.3d 501, 504 (7th Cir. 2013); see also Kross v. Western Elec. Co., 701 F.2d 1238, 1242 (7th Cir. 1983)

---

[8] Def. Memo. at 3.

[9] Def. Memo. at 2-4.

("[A] complaint when tested by summary procedures must be given the benefit of every possible implication."). A plaintiff need not plead facts sufficient to establish a *prima facie* case to survive a motion to dismiss. Swierkiewicz, 534 U.S. at 511-15.[10] Instead, the plaintiff need only include a short and plain statement of the claim sufficient to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Id., at 512. "[A]ll pleadings shall be so construed as to do substantial justice." Id., at 514 (quotation omitted).

## II.   Norrell properly alleges claims for retaliation, discrimination, entitlement, and interference under the Family Medical Leave Act.

The FMLA entitles employees to 12 workweeks of leave during any 12-month period "because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). "Employers are prohibited from both interfering with, [29 U.S.C.] § 2615(a)(1), and retaliating against, id. § 2615(a)(2), an employee's use or attempted use of FMLA leave. The difference between the two theories is that a retaliation claim requires the employee to prove discriminatory or retaliatory intent while an interference claim only requires the employee to prove the employer denied him entitlements provided by the Act." Pagel v.

---

[10] In its memorandum, JFT argues, "In order to set forth a claim for interference under the FMLA, a Plaintiff must establish … *prima facie* elements" in his or her Complaint. See Def. Memo. at 5.  JFT argues that because Plaintiff "has not" set forth allegations to establish "*prima facie* elements one, three, and five" of "a claim for interference under the FMLA," Plaintiff's Complaint fails. *See id.* at 5-6.  The standard that JFT uses to argue that Norrell's Complaint should be dismissed on the pleadings is contrary to well-established law. See Swierkiewicz, 534 U.S. at 511–15.

TIN Inc, 695 F.3d 622, 626 (7th Cir. 2012). Therefore, there are at least two distinct claims a plaintiff can assert under the FMLA. But see Pulczinkski v. Trinity Structural Towers, Inc., 691 F.3d 996, 1005-1006 (8th Cir. 2012) (recognizing three distinct claims under the FMLA: entitlement (a.k.a. "interference"), retaliation, and discrimination). Plaintiff has properly pled all available claims under the FMLA.[11]

### A. Norrell properly alleges claims for entitlement and interference under the FMLA.

"It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). These rights include, of course, an employee's entitlement to 12 workweeks of leave to address a serious health condition. See id. § 2612(a)(1)(D). These rights also include an employee's entitlement "to be restored by the employer to the position of employment held by the employee when the leave commenced; or to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." Id. § 2614(a)(1). JFT interfered with both of these entitlements.

---

[11] Norrell pleads facts sufficient to allege that he was an employee eligible to receive FMLA benefits and protections. See Compl. ¶ 66. He also pleads facts sufficient to allege that JFT had notice of his serious health condition and that he needed time off to address his serious health condition. See Compl. ¶¶ 14, 16–17, 37. JFT does not appear to dispute these allegations.

### 1. JFT terminated Norrell before Norrell exhausted his 12-workweek entitlement to federally protected leave in violation of the FMLA.

Norrell alleges that he exercised a total of nine weeks of his federally protected leave at the time of his termination.[12] With three weeks of federally protected leave left in the 12-month period, Norrell needed to attend to his serious health condition again in January 2017.[13] When Norrell attempted to take advantage of his remaining three weeks of federally protected leave, JFT terminated his employment.[14] JFT later claimed that Norrell exhausted his twelve weeks of FMLA leave before January 2017.[15] However, Norrell alleges that JFT manipulated Norrell's FMLA records to reflect that he had exhausted his FMLA leave when, in fact, he had not.[16] Thus, the Complaint alleges that JFT deprived Norrell of three weeks of federally protected leave when it terminated him.[17] See 29 C.F.R. § 825.220(b) ("Interfering with the exercise of an employee's rights would include … manipulation by a covered employer to avoid responsibilities under FMLA"). From these facts, it is plausible that JFT "interfere[d] with, restain[ed], or den[ied]" Norrell the exercise of or the attempt to exercise his rights under the FMLA. See 29 U.S.C. § 2615(a)(1). See also Burke, 714 F.3d at 504. Certainly, these facts are

---

[12] Compl. ¶ 1.

[13] Compl. ¶¶ 52, 56-57, 71.

[14] Compl. ¶¶ 53, 56.

[15] Compl. ¶ 54.

[16] Compl. ¶ 55.

[17] Compl. ¶¶ 72-73.

sufficient to put JFT on notice of what Norrell alleges. See Swierkiewicz, 534 U.S. at 512.

In its memorandum, JFT improperly disputes the facts alleged by Norrell and outlined above.[18] JFT's motion thus asks the Court to disregard allegations made in the Complaint and to assume as true facts not alleged in the Complaint but alleged by JFT in its memorandum. Specifically, in order for JFT to succeed on its motion, the Court must disregard Norrell's allegation that, when JFT terminated him, he had used only nine weeks of FMLA leave and had approximately three weeks of leave remaining.[19] Additionally, in order to decide the motion in JFT's favor, the Court would need to assume as true the allegation in JFT's memorandum that Norrell started his second FMLA leave on August 16, 2016.[20]

Essentially, in requesting relief under Fed. R. Civ. P. 12(b)(6), JFT asks this Court to disregard the standard of review. Plaintiff respectfully requests the Court apply the proper and well-known standard of review to JFT's motion and deny the same.

---

[18] See Def. Memo. at 3, 6.

[19] See Compl. ¶¶ 1, 20-31, 55-56, 71-73.

[20] Def. Memo. at 3.

## 2. When Norrell returned from leave, JFT did not return Norrell to the same position or an equivalent position in violation of the FMLA.

Norrell alleges that every time JFT returned him to work, JFT returned him to positions that were not the same or equivalent to his position as Vice President of Operations.[21] The failure of JFT to return Norrell to the same or an equivalent position is a violation of the FMLA. See 29 U.S.C. §§ 2615(a)(1), 2614(a)(1).

While JFT improperly disputes other allegations in Norrell's Complaint, JFT does not dispute that when it returned Norrell to work in August 2016, JFT failed to return him to the same or an equivalent position.[22] JFT apparently attempts to defend its failure to return Norrell to the same or an equivalent position by, once again, alleging facts not in the record – specifically, that Norrell was unable to drive and unable to work full-time.[23]

Norrell does not allege that he was unable to fulfill the duties of his role as Vice President of Operations after he returned from FMLA. In fact, Norrell alleges that, at all times, he expected JFT to return him to his Vice President of Operations position.[24] It would be illogical to expect an outcome one knows to be impossible. Therefore, the reasonable inference to draw from the fact that Norrell expected to be returned to his former role was that Norrell was, indeed, *able* to return to his former role. See Burke, 714

---

[21] Compl. ¶¶ 9, 32, 34, 39, 45-47.

[22] Def. Memo. at 3 ("Foster invited Plaintiff to perform miscellaneous work such as tree-cutting, yardwork and other projects at his private cabin.").

[23] Def. Memo. at 2-3.

[24] Compl. ¶¶ 33, 43, 47, 50.

F.3d at 504 (instructing courts to "draw all reasonable inferences in [the plaintiff's] favor" when deciding motions on the pleadings).

Through discovery JFT will no doubt try to develop a record proving that it was unable to return Norrell to his same or an equivalent position. JFT is free to cite to this "evidence" in support of its motion for summary judgment. However, relying on the mere allegation, not found in the Complaint, that Norrell was unable to return to work in order to grant JFT's motion to dismiss would be inappropriate at the dismissal stage.[25] Burke, 714 F.3d at 504; Kross, 701 F.2d at 1242 (7th Cir. 1983).

For the purposes of *this* decision *on the pleadings*, Norrell respectfully requests that the Court draw all inferences favorable to Norrell, disregard JFT's improper allegations, and deny JFT's motion to dismiss.

### B.  Norrell properly alleges claims for discrimination and retaliation under the FMLA.

"It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). "[A]n employer cannot use an employee's use of FMLA leave as a negative factor in promotion, termination, and other employment

---

[25] This may be why each and every case to which JFT cites in support of its argument for the dismissal of Norrell's FMLA claims are cases in which the Court was deciding motions for summary judgment and not motions to dismiss. See Smith v. Hope Sch., 560 F.3d 694 (7th Cir. 2009); Simpson v. Office of Chief Judge of Cir. Crt., 559 F.3d 706 (7th Cir. 2009); Darst v. Interstate Brands Corp., 512 F.3d 903 (7th Cir. 2008); Haschmann v. Time Warner Ent. Co., 151 F.3d 591 (7th Cir. 1998); Garcia v. Crown Serv., Inc., 2006 WL 2381786 (E.D. Wis. 2006).

decisions." <u>Pagel</u>, 695 F.3d at 631. <u>See also</u> 29 C.F.R. § 825.220(c). Circumstantial evidence tending to prove that discrimination or retaliation occurred includes "suspicious timing, ambiguous statements from which retaliatory intent can be drawn, evidence of similar employees being treated differently, or evidence that the employer offered a pretextual reason for the termination." <u>Pagel</u>, 695 F.3d at 631.

In the Complaint, Norrell alleges facts that pave three distinct routes to recovery under section 2615(a)(2).

> **1. In violation of the FMLA, JFT demoted Norrell when he returned to work in retaliation for Norrell exercising his right to federally protected leave.**

Norrell alleges that JFT retaliated against him for taking FMLA leave when it returned him to a "handy-man" position rather than to his role as Vice President of Operations.[26] The suspicious timing of Norrell's demotion, i.e. directly following his exercise of FMLA leave, is enough to overcome summary judgment and is surely enough to overcome a motion to dismiss.[27] <u>See</u> <u>id.</u>

> **2. In violation of the FMLA, JFT terminated Norrell in retaliation for attempting to use his federally protected leave.**

---

[26] *See* Compl. ¶¶ 32-33, 39, 50.

[27] JFT does not appear to make any legal argument regarding why Norrell's discrimination claims premised on JFT returning him to a demoted position after his first FMLA leave is insufficiently pled. Whether or not Norrell exhausted his FMLA leave after his *second* leave is inconsequential if JFT demoted him after his *first* leave and a motivating factor in that demotion was Norrell's use of FMLA leave. However, as JFT argues for total dismissal, and not partial dismissal, Norrell has attempted to explain to the Court why his pleadings are sufficient in spite of JFT's incomplete arguments to the contrary.

Norrell alleges that JFT retaliated against him for needing to take FMLA leave in January 2017.[28] Specifically, Norrell alleges that his use of federally protected leave was a "motivating factor in Defendants' decision to terminate him."[29] Again, the suspicious timing of Norrell's termination—while he was in the hospital attending to his serious health condition of which JFT had notice—in addition to Foster's previous conversations with Norrell admonishing him for taking time away from work and JFT's failure to provide any reason for his termination at all, is enough to overcome summary judgment and is therefore enough to overcome a motion to dismiss.[30] See id.

JFT attempts to overcome these allegations by alleging in its memorandum that Norrell exhausted his leave.[31] Again, the allegation that Norrell exhausted his leave runs contrary to the allegations in the Complaint.[32] Plaintiff respectfully requests that this Court disregard the allegations in JFT's memorandum that are not also stated in Plaintiff's Complaint. Burke, 714 F.3d at 504; Kross, 701 F.2d at 1242 (7th Cir. 1983).

---

[28] See Compl. ¶¶ 53, 79.

[29] Compl. ¶ 79.

[30] See Compl. ¶¶ 37, 41-42, 53.

[31] See Def. Memo. at 3, 5-6.

[32] See supra II(A)(1).

**3. In violation of the FMLA, JFT treated Norrell worse than similarly situated employees that did not exercise their rights under the FMLA.**

Norrell alleges that JFT treated him differently than similarly situated employees.[33] Norrell alleges that another individual at JFT struggles with alcoholism and that JFT knows this because this individual has arrived to work intoxicated and received DWIs in JFT's company-owned vehicles.[34] This individual has never taken FMLA leave to treat his alcoholism and still works for JFT at the executive level.[35] JFT's differential treatment of this similarly situated employee is enough to overcome summary judgment, so it is certainly enough to overcome a motion to dismiss.[36] See id.

Because Norrell's Complaint makes out a plausible claim for FMLA discrimination and retaliation, Norrell respectfully requests that the Court deny JFT's motion to dismiss. See Burke, 714 F.3d at 504.

---

[33] See Compl. ¶¶ 58, 80.

[34] Compl. ¶ 58.

[35] See Compl. ¶ 58.

[36] Again, JFT does not appear to make any legal argument regarding why Norrell's discrimination claim premised on JFT's disparate treatment is insufficiently pled. Whether or not Norrell exhausted his FMLA leave after his *second* leave is inconsequential if, after his *first* leave, JFT treated him differently than similarly situated coworkers that did not take FMLA leave. However, as JFT argues for total dismissal, and not partial dismissal, Norrell has attempted to explain to the Court why his pleadings are sufficient in spite of JFT's incomplete arguments to the contrary.

13

### III.    Norrell properly alleges claims for discrimination and retaliation under the Employment Retirement Income Security Act.

It is unlawful for an employer to "discharge … or discriminate against [an employee] … for exercising any right to which he is entitled under the provisions of an employee benefit plan … or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140 (often referred to as "§ 510"). Section 510 of ERISA "is intended to discourage employers from discharging or harassing employees in an attempt to prevent them from using their … medical benefits." Dewitt v. Proctor Hosp., 517 F.3d 944, 949 (7th Cir. 2008). See also Lindemann v. Mobil Oil Corp., 141 F.3d 290, 295 (7th Cir. 1998) ("ERISA protects employees against dismissal by employers who seek to limit costs of health benefit plans by preventing the use of such benefits."). Section 510 "prohibits retaliation for the exercise of plan benefits." Nauman v. Abbott Laboratories, 669 F.3d 854, 857 (7th Cir. 2012). "[A] plaintiff in an ERISA action must demonstrate that the employer had the 'specific intent' to violate the statute." Little v. Cox's Supermarkets, 71 F.3d 637, 642 n. 3 (7th Cir. 1995). See also Lindemann, 141 F.3d at 295 (stating that the plaintiff must demonstrate at the summary judgment stage "that their employers terminated them with the specific intent of …. retaliating for the use of benefits.").

JFT does not understand Norrell's claims under § 510.  JFT seems to think that the crux of Norrell's § 510 allegation is that JFT provided him a COBRA notification in the

hospital.[37] Even more confusing is that, through its argument that JFT did not terminate

Norrell to prevent Norrell from using his medical benefits, JFT essentially concedes that

it terminated Norrell for exercising his rights under the FMLA:

> Absenteeism [has] long been recognized by the Seventh
> Circuit as [a] legitimate, nondiscriminatory reason[] for an
> employer to terminate an employee … The unexpected lengthy
> and multiple absences of any employee that had been put in a
> trusted position would create a variety of reasons that excessive
> time and costs would be imposed upon a business.[38]

See 29 C.F.R. § 825.220(c) ("FMLA leave [cannot] be counted under no fault attendance

policies.").

If JFT is confused about Norrell's claims under § 510, the proper procedure is to

move for clarification under Fed. R. Civ. P. 12(e), not move to dismiss under Fed. R. Civ.

P. 12(b)(6). ("A party may move for a more definite statement of a pleading to which a

responsive pleading is allowed but which is so vague or ambiguous that the party cannot

reasonably prepare a response.") See also Bennett v. Schmidt, 153 F.3d 516, 518 (7th Cir.

1998) ("The Rules of Civil Procedure make a complaint just the starting point.  Instead of

lavishing attention on the complaint until the plaintiff gets it just right, a district court

should keep the case moving – if the claim is unclear, by requiring a more definite

---

[37] See Def. Memo. at 7 ("Plaintiff … alleges that JFT interfered with Plaintiff's ERISA
rights when it provided him with a COBRA notification while he was in the hospital.
This alleged fact alone, [sic.] is insufficient to establish a claim for ERISA retaliation.").

[38] Def. Memo. at 7-8.

statement under Rule 12(e), and if the claims is clear but implausible, by inviting a motion for summary judgment.").

Regardless of JFT's confusion, the facts alleged in the Complaint give rise to a plausible violation of ERISA. Norrell alleges facts giving rise to the inference that Foster was upset with Norrell for using medical benefits provided by JFT because JFT was self-insured and therefore paid out-of-pocket for Norrell's medical care.[39] For example, Foster admonished Norrell for costing him "a f**cking fortune this year," presumably by using his medical benefits for which JFT paid.[40] This conversation happened in October 2016.[41] After this conversation in October, the next time Norrell would have used JFT's health insurance was on January 23, 2017—the same day that he was terminated.[42] This time-frame gives rise to the reasonable inference that Foster terminated Norrell in January with the specific intent of avoiding paying for Norrell's medical expenses and in retaliation for using his medical benefits. See Kross, 701 F.2d at 1242 ("[A] complaint when tested by summary procedures must be given the benefit of every possible implication.").

If it is taken as true, as it must be under 12(b)(6), that Foster terminated Norrell in January with the specific intent of avoiding paying for Norrell's medical expenses and in retaliation for using his medical benefits, then Norrell has stated a plausible claim under §

---

[39] Compl. ¶¶ 37, 42.

[40] Compl. ¶ 42.

[41] See Compl. ¶ 40.

[42] See Compl. ¶¶ 52-53.

510. See id.; 29 U.S.C. § 1140. Additionally, if it is taken as true, as it must be under 12(b)(6), that Foster retaliated against Norrell for using his medical benefits by demoting him and preventing him from returning to his Vice President of Operations position, then Norrell has stated a plausible claim under § 510. Nauman, 669 F.3d at 857.

## CONCLUSION

In order to grant JFT dismissal, the Court would need to abandon well-established Rule 12(b)(6) standards. Norrell respectfully requests that the Court apply the correct standard of review to JFT's motion and deny the same.

Dated: July 23, 2018

**MADIA LAW LLC**

/s/Joshua A. Newville
Joshua A. Newville, WI #1092059
323 Washington Ave. N. #200
Minneapolis, Minnesota 55401
Ph 612.349.2743 | F 612.235.3357
newville@madialaw.com

Cody J. Blades, MN #396341
*Pro hac vice application forthcoming*
323 Washington Ave. N. #200
Minneapolis, Minnesota 55401
Ph 612.349.2720 | F 612.235.3357
cblades@madialaw.com