IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DEAN NORRELL,

                          Plaintiff,

v.                                                                OPINION and ORDER

JEFF FOSTER TRUCKING, INC. and                   18-cv-443-jdp
JEFFRY A. FOSTER,

                         Defendants.

---

      Plaintiff Dean Norrell is a former employee of defendant Jeff Foster Trucking, Inc., a trucking company based in Superior, Wisconsin. He alleges that the company and its president, Jeffry A. Foster, violated his rights under the Family and Medical Leave Act and the Employment Retirement Income Security Act by demoting, harassing, refusing to reinstate, and ultimately terminating him after he took approximately nine weeks of FMLA leave. Defendants move to dismiss Norrell's complaint under Federal Rule of Civil Procedure 12(b)(6). They contend that Norrell exhausted his 12-week FMLA entitlement over a period of three months, during which Norrell was in and out of treatment programs for alcoholism and depression and unable to return to his prior position. They further contend that Norrell has failed to allege sufficient allegations to show that Foster violated ERISA by acting with specific intent to interfere with Norrell's employment benefits. Dkt. 4. Because Norrell alleges facts sufficient to state plausible claims under FMLA and ERISA, the court will deny defendants' motion to dismiss.

ALLEGATIONS OF FACT

The court draws the following facts from Norrell's complaint, Dkt. 1, and accepts them as true for the purpose of deciding defendants' motion. *Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016).

Dean Norrell worked at John Foster Trucking, Inc. (JFT) for six years. For two-and-a-half of those years, he served as JFT's vice president of operations and reported directly to the company's president, Jeffry A. Foster. Norrell performed his job well, and he was well-liked by those he managed. But Norrell had struggled with depression and alcoholism in the past—a fact that Foster knew at the time he hired him in 2011. In 2016, after seven years of sobriety, Norrell became severely depressed as the result of an impending divorce and the terminal illness of a family member. This depression caused Norrell to relapse.

In June of 2016, Norrell informed Foster that he had relapsed and that he would need time off. Roughly seven weeks later, Norrell completed an intensive outpatient treatment program. That same day, Foster met with one of Norrell's treatment counselors, who told Foster that Norrell was ready to return to work. Despite this assurance, Foster told Norrell that he would need to "get everyone [at JFT] on the same page" before Norrell could return. Dkt. 1, ¶ 23.

For two weeks, Norrell was not permitted to return to work. When Norrell asked about reinstatement, Foster told him that the person filling in for Norrell was enjoying the position and pay structure. He also noted how much Norrell's treatment was costing JFT, which is self-insured and pays for the medical treatment and services that employees use. Norrell reminded Foster that his leave was protected under FMLA. In mid-August, Foster instructed Norrell to go to Foster's private cabin to perform tree-cutting, yardwork, and other projects.

Norrell agreed, hoping that Foster would eventually let him return to his vice president of operations job.

At some point that fall (on a date not specified in the complaint), Norrell sought further treatment through an inpatient program. When he completed treatment on September 15, he was again ready to return to work, but Foster refused to reinstate him. Finally, in early October, Foster allowed Norrell to resume doing yardwork at his cabin. Later that month, Foster complained to Norrell that, as a business owner, "you spend 80% of your time on 20% of your people," *id.* ¶ 41, and that Norrell had "cost [Foster] a fucking fortune this year." *Id.* ¶ 42.

Foster intermittently allowed Norrell to work in menial, lower-paid positions until January 2017, when he asked Norrell to train another employee to assume Norrell's former job responsibilities as vice president of operations. This devastated Norrell, and as a result he relapsed and was hospitalized. JFT terminated him a few days later.

ANALYSIS

Norrell asserts claims under two statutes: (1) interference in violation of section 2615(a)(1) of the FMLA,[1] and (2) interference in violation of section 510 of ERISA. JFT moves to dismiss these claims, alleging that Norrell had fully exhausted his FMLA benefits

---

[1] Although Norrell also indicates that he is asserting a claim of retaliation under section 2615(a)(2) of the FMLA, he does not actually allege a separate retaliation claim. Section 2615(a)(2) protects employees who experience retaliation or discrimination "for opposing any practice" made unlawful by the FMLA. 29 U.S.C. § 2615(a)(2). "Opposition includes things such as filing grievances or making statements against unlawful conduct." *Arrigo v. Link Stop, Inc.*, 975 F. Supp. 2d 976, 987 (W.D. Wis. 2013). Although Norrell makes one allegation that could arguably qualify as expressing opposition to an unlawful practice, *see* Dkt. 1, ¶ 27, this, by itself, is not enough to state a claim of § 2615(a)(2) retaliation. *See Simpson v. Office of Chief Judge of Circuit Court of Will Cty.*, 559 F.3d 706, 717–19 (7th Cir. 2009) (laying out the elements of a § 2615(a)(2) claim).

by the time he was terminated and has failed to plead his ERISA claim with the required level of specificity.

## A. Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts sufficient to state a plausible claim for relief, that is, facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 826 (7th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This does not require heightened pleading of factual details. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 (2007). Rather, a complaint need only "give the defendant fair notice of what the claim is and the grounds on which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Although the court is not bound to accept a plaintiff's legal conclusions or conclusory allegations, "[a] complaint that invokes a recognized legal theory . . . and contains plausible allegations on the material issues . . . cannot be dismissed under Rule 12." *Richards v. Mitcheff*, 696 F.3d 635, 638 (7th Cir. 2012).

## B. FMLA interference claims

The FMLA entitles qualifying employees to "a total of 12 workweeks of leave during any 12-month period" for the purpose of family and medical care. 29 U.S.C. § 2612(a)(1). The act makes it illegal for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise" an employee's right to FMLA leave. *Id.* § 2615(a)(1). An employee who avails himself of FMLA leave is entitled "to be restored by the employer to the position of employment held by the employee when the leave commenced; or to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and condition of employment." *Id.* § 2614(a)(1).

To prevail on an FMLA-interference theory, the plaintiff employee must prove that: (1) he was eligible for the FMLA's protections; (2) his employer was covered by the FMLA; (3) he was entitled to take leave under the FMLA; (4) he provided sufficient notice of his intent to take leave; and (5) his employer denied him FMLA benefits to which he was entitled. *Pagel v. TIN Inc.*, 695 F.3d 622, 627 (7th Cir. 2012) (internal citation and quotation marks omitted). JFT moves to dismiss Norrell's FMLA claims on the ground that Norrell "has not and cannot set forth any allegations to establish *prima facie* elements one, three, and five." Dkt. 5, at 6. This argument follows from defendants' contention that Norrell had fully exhausted his FMLA benefits months before he was ultimately terminated. Thus, defendants argue, Norrell was not eligible for, entitled to, or denied FMLA leave as is required to establish the first, third, and fifth elements of an ERISA interference claim.

This is, at bottom, a factual dispute, and the court will not resolve such disputes at this stage. Norrell says that he had approximately three weeks of federally protected leave left at the time of his termination in January 2017. Dkt. 1, ¶ 56. Defendants argue that Norrell "concedes that he was permitted to take *more* than [12 weeks] of leave," Dkt. 5, at 6, and that Norrell had exhausted his FMLA entitlement by September 13, 2016. *Id.* at 4. This discrepancy stems from a disagreement over whether various periods of time during which Norrell was not working counted as FMLA leave. Norrell contends that, during the periods between July 28–August 9 and September 16–October 3, 2016, Foster knew that Norrell was able to return to work yet refused to let him do so. Because Foster prevented Norrell from working, Norrell does not believe that those periods should be counted for the purposes of calculating how much leave he took. Defendants argue that these periods spent not working *should* count as FMLA

5

leave because Norrell "does not (and cannot) allege" that he provided JFT with medical documentation confirming that he was eligible to return. Dkt. 5, at 2, 3.

This dispute is not one that the court can resolve on a motion to dismiss. Drawing all reasonable inferences in the light most favorable to the plaintiff, the court is satisfied that Norrell has not pleaded himself out of court. Rather, he has sufficiently alleged that he had at least some FMLA leave time remaining at the time of his termination (although the court has not been able to verify Norrell's allegation that he had as much as three weeks remaining, even under Norrell's version of events).

Also, even if Norrell had exhausted his FMLA entitlement by the time defendants terminated him, the termination is not the only adverse employment action at issue in this case. Norrell alleges that he was demoted, prevented from working despite his readiness to do so, and harassed about the cost of his treatment in the months leading up to his termination. Many of these events occurred prior to September 13, 2016, a period during which defendants concede that Norrell was covered by FMLA.

Norrell has clearly stated claims of FMLA interference—even under the defendants' version of the facts. The court will not dismiss them.

## C. ERISA interference claims

Section 510 of ERISA makes it illegal for an employer to "discharge, . . . suspend, . . . discipline, or discriminate against [an employee] for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140. To recover under section 510, an employee must establish that an adverse action affecting his employment situation was taken by his employer with the specific intent

of interfering with his benefit rights. *Teumer v. Gen. Motors Corp.*, 34 F.3d 542, 550 (7th Cir. 1994).

Defendants argue that Norrell's allegations fail to meet the "heightened pleading of 'specific intent'" required for an ERISA interference claim. Dkt. 5, at 9. But there is no heightened pleading standard for an ERISA interference claim; a plaintiff need merely allege sufficient facts from which one could reasonably infer that "[t]he intent to frustrate the attainment of benefits [was] at least a motivating factor for the adverse action." *Teamsters Local Union No. 705 v. Burlington N. Santa Fe, LLC*, 741 F.3d 819, 826 (7th Cir. 2014).

Here, Norrell alleges that Foster made multiple comments about how much time and money Norrell's treatment was costing JFT in the months leading up to his termination. Although defendants characterize Foster's alleged statements as ambiguous rather than suggestive of any intent to interfere with Norrell's benefit rights, Norrell's allegations are more than sufficient to raise an inference that Foster acted with the requisite specific intent. *See, e.g.*, *Deka v. Countryside Ass'n for People With Disabilities, Inc.*, 140 F. Supp. 3d 698, 709 (N.D. Ill. 2015) (plaintiff raised sufficient allegations to state a claim under section 510 where she alleged that she had been terminated "'with the specific intent' of preventing her from using employment-related health insurance benefits" and that supervisors made comments to her "regarding the costliness of covering serious illnesses and their disapproval of FMLA"). Norrell may proceed on his ERISA claim.

ORDER

IT IS ORDERED that defendants Jeff Foster Trucking, Inc. and Jeffry A. Foster's motion to dismiss, Dkt. 4, is DENIED.

Entered October 30, 2018.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge